**H. Keith ZAHN et al., Plaintiffs-Appellants,**

v.

**INTERNATIONAL PAPER COMPANY, Defendant-Appellee.**

**No. 742, Docket 71-2157.**

United States Court of Appeals, Second Circuit.

Argued June 28, 1972.

Decided Sept. 7, 1972.

Rehearing Denied Oct. 18, 1972.

Mark L. Sperry, Middlebury, Vt. (Langrock & Sperry, Middlebury, Vt.), for plaintiffs-appellants.

Taggart Whipple, New York City (Davis, Polk & Wardwell, Richard E. Nolan, William H. Levit, Jr., and Ronald V. Bryant, New York City, of counsel), and Black & Plante, White River Junction, Vt. (Henry F. Black and George W. Ray, Jr., White River Junction, Vt., of counsel), for defendant-appellee.

Before MOORE, SMITH and TIMBERS, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

We are confronted with the novel question whether a diversity case will be allowed to proceed as a class action under Fed.R.Civ.P. 23(b)(3) when the named plaintiffs meet the jurisdictional amount requirement of 28 U.S.C. § 1332 (a) but the unnamed representatives of the class do not.[1] That question was

---

1. The district court found that the named plaintiffs had each made good faith claims of damage in excess of $10,000, but that it was to a legal certainty incredible that each of the other lakefront landowners had suffered pollution damage in that amount. Appellants would cure this defect by allotting to the unnamed plaintiffs their share of the claimed punitive damages ($10,000,000) ; therefore, they argue, no final determination of class status can be made until after damages have been awarded. But the trial court is plainly not compelled to accept a claim of puni-

answered in the negative by the late Chief Judge Leddy in the United States District Court for the District of Vermont (53 F.R.D. 429). He refused to allow the case to proceed as a class action and struck all references in the complaint to persons other than the four named plaintiffs. On October 21, 1971, Judge Leddy certified the order for interlocutory appeal under 28 U.S.C. § 1292(b), and this court granted permission to appeal.

The complaint, brought by the four named owners of lakefront property on Lake Champlain on behalf of themselves and some 200 other similarly situated riparian landowners and lessees, sought compensatory and punitive damages in the total amount of $40,000,000 for damage to their property rights caused by appellee's alleged pollution of the lake's waters. Purportedly the discharge of untreated or inadequately treated waste from appellee's now-closed pulp and paper making plant in the Village of Ticonderoga, passing into the lake via Ticonderoga Creek created a massive sludge blanket on the bottom of the lake; masses of sludge apparently break off periodically to wash up on appellants' property. As a consequence appellants' property is claimed to be unfit for any recreational or other reasonable use and to be permanently diminished in value.

■ With "great reluctance" the district court read Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969) to compel the holding that "each class member in a spurious class action must independently satisfy the requirement as to jurisdictional amount." We agree and affirm the order below.

This case, brought under Rule 23(b) (3), would have been characterized as a "spurious" class action prior to the 1966 amendment of Rule 23. Since the new Rule 23 was intended to substitute a functional, pragmatic approach for the confusing conceptualism of the old rule,[2] the question arose whether the old restrictions which had precluded the aggregation of separate claims to compute the amount in controversy in a spurious class action were discarded. In Snyder, the Court stated flatly that the old categories and doctrines still apply to the determination of jurisdictional amount: in class actions which would formerly have been classified as spurious, separate and distinct claims may not be aggregated. It is true that in Snyder no single plaintiff met the jurisdictional amount; as the Court stated the issue, it declined to "hold that 'matter in controversy" encompasses the aggregation of all claims that can be brought together in a single suit, regardless of whether *any single plaintiff* has a claim that exceeds the jurisdictional amount." Snyder, 394 U.S. at 338, 89 S.Ct. at 1058 (emphasis supplied). Snyder therefore does not squarely hold that every unnamed member of a proposed spurious class must individually satisfy the jurisdictional amount. But appellants' attempt to escape the ambit of Snyder by this route is met by persuasive internal evidence

tive damages, however unwarranted, made for the purpose of conferring federal jurisdiction. *See* Schroeder v. Nationwide Mutual Insurance Co., 242 F.Supp. 787, 789 (S.D.N.Y.1965). Indeed, in computing jurisdictional amount, a claim for punitive damages is to be given closer scrutiny, and the trial judge accorded greater discretion, than a claim for actual damages. *See* Brown v. Bank of America Trust & Savings Ass'n., 281 F.Supp. 82, 84 (N.D. Ill.1968). Since punitive damages are considered together with actual damages in determining the amount in controversy, the district court necessarily rejected appellants' claim for punitive damages as

exorbitant when it found to a legal certainty that the jurisdictional amount could not be met. Given a mass tort situation in which the conduct complained of has been altered to conform to changing societal attitudes, and in which multiple punitive awards would in any case be of doubtful utility, *see* Roginsky v. Richardson-Merrell, Inc., 378 F.2d 832, 840–841 (2d Cir. 1967), we are not persuaded that the district court has abused its discretion.

2. *See* C. Wright, Handbook of the Law of Federal Courts § 72, at 307 (2d ed. 1970).

that the Court did not so limit the rule enunciated there.[3]

The Court stated the jurisdictional rule for the former spurious class action, unaltered by the amended Rule 23, to have been that *"each* plaintiff had to show that his individual claim exceeded the jurisdictional amount." *Id.* at 335, 89 S.Ct. at 1056 (emphasis supplied). The Court stressed that the aggregation doctrine, grounded in the statutory phrase "matter in controversy," far antedated Rule 23, and adopted by illustration the language of an early joinder case, Troy Bank v. G. A. Whitehead & Co.:

> When two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of *each* be of the requisite jurisdictional amount. . . . 222 U.S. 39, 40, 32 S.Ct. 9, 56 L.Ed. 81. [*Id.* at 336, 89 S.Ct. at 1057 (emphasis supplied)]

And the analogy to joinder cases remains valid:

> The fact that judgments under class actions formerly classified as spurious may now have the same effect as claims brought under the joinder provisions is certainly no reason to treat them *differently* from joined actions for purposes of aggregation.

> [*Id.* at 337, 89 S.Ct. at 1057 (emphasis in original)]

After 1938, Clark v. Paul Gray, Inc., 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001 (1939), the rule evolved in joinder cases that distinct claims could not be aggregated was applied to class actions under the new Federal Rules. Even aside from the clear language quoted above, the Court's reliance on *Clark* appears to offer an insurmountable obstacle to appellants, for the *Clark* Court had recognized that one originally named member of the proposed class might meet the jurisdictional amount requirement, just as the named plaintiffs do here; yet the action was dismissed as to all plaintiffs except that one. *Clark*, 306 U.S. at 589–590, 59 S.Ct. 744. It is no basis to distinguish *Clark* that *all*, rather than only one, of the named plaintiffs here meet the jurisdictional amount requirement; the point is that in a spurious class action one plaintiff may not ride in on another's coattails. Similarly the Court of Appeals for the Fifth Circuit, whose position was upheld by *Snyder*, dismissed a purported class action where only one member of the proposed class, albeit not a named member, could make a showing of the requisite jurisdictional amount, citing Clark v. Paul Gray, Inc., *supra.* Alvarez v. Pan American Life Insurance Co., 375 F.2d 992, 996–997 (5th Cir.), cert. denied, 389 U.S. 827, 88 S.Ct. 74, 19 L.Ed.2d 82 (1967).

We are entirely sympathetic to the proposition that the amended Rule 23 "should be given a liberal rather than a restrictive interpretation" in order to vindicate small federal claims. Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 563 (2d Cir. 1968); but the policies underlying the amended rule are not determinative of this case.[4] Rather it is clear in the light of *Snyder*, 394 U.S. at 336, 89 S.Ct. 1053, that the *critical focus* in resolving the issue before us must be on 28 U.S.C. § 1332. Accepting that, one might ask how application of the aggregation doctrine to preclude this class action will sustain the congressional purpose underlying the jurisdictional amount requirement of section 1332 stressed in *Snyder:* to check the rising caseloads in federal courts. After all, this action may still be maintained in federal court under the banner of the named plaintiffs; but that was equally true in *Clark* and *Alvarez.* However,

3. Indeed the dissent plainly read the rule laid down in the majority opinion to deny appellants this escape. *Snyder*, 394 U.S. at 343, 89 S.Ct. 1053.

4. It is clear both from the majority opinion, 394 U.S. at 338, 341, 89 S.Ct. 1053, and from the dissent of Justice Fortas, joined by Justice Douglas, *id.* at 342, 89 S.Ct. 1053, that the Court in *Snyder* confronted and rejected the same policy arguments based on the amended Rule 23 which are presently made to this court.

were this case to proceed as a class action it would in fact significantly increase the burden on the federal courts. Once appellee's liability had been established, and even assuming that appellee's defenses would not vary as to different members of appellants' class, it would be an enormously time consuming task to assess the damages suffered by each of the 200 riparian landowners, each of whose claims is regarded as separate and distinct. Indeed the Advisory Committee did not intend that Rule 23(b)(3) ordinarily be utilized in a mass tort situation. Advisory Committee Note, 39 F.R.D. 98, 103 (1966). Moreover a second policy consideration relied on in *Snyder* is relevant here: local controversies involving claims to be settled on the basis of state law "can often be most appropriately tried in state courts." *Snyder*, 394 U.S. at 341, 89 S.Ct. at 1059.

We are therefore persuaded that the district court properly applied the non-aggregation doctrine in refusing jurisdiction over the plaintiff class proposed in this case.

Affirmed.

TIMBERS, Circuit Judge (dissenting):

With deference, it seems to me that the majority reads the Supreme Court's decision in Snyder v. Harris, 394 U.S. 332 (1969), for all it might be worth, rather than for the least it has to be worth. More significantly, the majority decision here ignores the well-established principle that if a case is properly in a federal court, that court has subject matter jurisdiction over the case or controversy in its entirety and therefore can adjudicate related claims of ancillary parties who have no independent jurisdictional grounds.

I.

The concept of "ancillary jurisdiction" has been a part of the jurisprudence of the federal courts for many years. It originally was used to allow parties otherwise without grounds for jurisdiction to assert rights in property that had

come under a federal court's control. Freeman v. Howe, 65 U.S. (24 How.) 450 (1861). Similarly, the doctrine was utilized to enable federal courts to effectuate their judgments in suits that had properly been before them. Supreme Tribe of Ben-Hur v. Cauble, 255 U.S. 356 (1921). During this early period, the concept of ancillary jurisdiction was applied only to situations in which its use was necessary to the effective operation of the federal courts.

Since the Supreme Court's decision in Moore v. New York Cotton Exchange, 270 U.S. 593 (1926), however, the concept has been used primarily to promote judicial economy through the avoidance of piecemeal litigation. In *Moore*, a state claim not independently cognizable in a federal court was asserted by way of compulsory counterclaim to a federal claim. The Court held that the state claim could be heard in the federal court even though the federal claim was eventually dismissed on the merits. The *Moore* decision was one of the major inspirations for the development of a general principle that federal courts can invoke ancillary jurisdiction to resolve in a single action any disputes, regardless of jurisdictional sufficiency, arising out of the facts supporting the plaintiff's "cause of action". See, e. g., Hurn v. Oursler, 289 U.S. 238 (1933).

The enactment of the Federal Rules of Civil Procedure, with their provisions for liberal joinder of parties and claims, especially stimulated the growth of the ancillary jurisdiction doctrine. The Rules broadened the concept of a single triable case or controversy by allowing to be joined in one action all parties and claims related to the main action. Also, courts found the ancillary jurisdiction doctrine helpful in putting to use some of the new joinder devices, particularly Rules 14, 20 and 24. Lower federal courts, including ours, were quick to recognize that ancillary jurisdiction was available to solve jurisdictional problems, such as lack of diversity or amount in controversy, which were often attendant upon utilization of joinder procedures. See, e. g., Dery v. Wyer, 265 F.2d 804

(2 Cir. 1959) (impleader of third party defendant); Formulabs, Inc. v. Hartley Pen Co., 318 F.2d 485 (9 Cir. 1963) (intervention as of right); Jacobson v. Atlantic City Hosp., 392 F.2d 149 (3 Cir. 1968) (simple joinder of parties). But see Hymes v. Chai, 407 F.2d 136 (9 Cir. 1969) (simple joinder of parties).[1] These developments impelled one commentator to say recently that the ancillary jurisdiction doctrine "is in a process of evolution from a rule of prevention of basic unfairness to a rule of convenience for resolving all issues involved in the subject of the matter before the court". Note, Federal Practice: Jurisdiction of Third-Party Claims, 11 Okla.L.Rev. 326, 329 (1958), quoted in 7A Wright & Miller, Federal Practice and Procedure § 1917, at 590 n. 29 (1969). The majority's decision today greatly retards this "process of evolution".

An extension of the ancillary jurisdiction doctrine to permit an adjudication of the claims of the unnamed plaintiffs in this action would be unquestionably harmonious with this development.[2] For example, although in the past courts have held that they could not invoke ancillary jurisdiction to hear claims for less than $10,000 asserted by parties joined under Rule 20, the majority of recent decisions are to the contrary. See, e. g., General Research, Inc. v. American Employers' Ins. Co., 289 F.Supp. 735 (W.D.Mich.1968); Lucas v. Seagrave Corp., 277 F.Supp. 338 (D.Minn.1967); Johns-Manville Sales Corp. v. Chicago Title & Trust Co., 261 F.Supp. 905 (N.D.Ill. 1966). This change in position reflects growing realization that the disposition of jurisdictionally insufficient claims

along with reasonably related claims having an independent jurisdictional basis is expeditious and not unduly burdensome. There is, of course, a limit on the number and nature of claims that can be conveniently tried together, but that limit would not be exceeded by adjudicating all the class members' claims here. Indeed, the purpose of the Rule 23(b)(3) class action device was to provide an efficient and economically effective procedure for adjudicating numerous small, closely related claims. See Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2 Cir. 1968); Escott v. Barchris Construction Corp., 340 F.2d 731 (2 Cir. 1965).

II.

The Supreme Court has not yet dealt with the ancillary jurisdiction doctrine in the context of a decision involving the Federal Rules of Civil Procedure. But in United Mine Workers v. Gibbs, 383 U.S. 715 (1966), the Court commented on the impact of the Rules while approving the liberal use of "pendent jurisdiction", a particularized application of the ancillary jurisdiction concept. In *Gibbs*, the plaintiff asserted a claim under § 303 of the Labor Management Relations Act and a state claim of unlawful conspiracy and boycott. The Court held that by means of pendent jurisdiction the federal court had adjudicative power over the state claim. Writing the opinion for the Court, Justice Brennan said:

"  .  .  .  Under the [Federal Civil] Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and

---

1. In addition to a split of authority on the use of ancillary jurisdiction with regard to joinder under Rule 20, the courts have also held that the doctrine may not be used to provide jurisdiction over a party determined to be indispensable under Rule 19, e. g., Lang v. Colonial Pipeline Co., 383 F.2d 986 (3 Cir. 1967), or a party seeking permissive intervention under Rule 24(b), e. g., Hunt Tool Co. v. Moore, Inc., 212 F.2d 685 (5 Cir. 1954).

2. Such a result would be consistent with the firmly established rule that claims

against third party defendants properly impleaded under Rule 14 need not satisfy the amount in controversy requirement, King v. State Farm Mut. Ins. Co., 274 F.Supp. 824 (W.D.Ark.1967); Schinella v. Iron Workers Union Local 361, 149 F.Supp. 5 (E.D.N.Y.1957), and the rule that, once federal jurisdiction has been fixed by the original parties of record in a class action, subsequent intervenors need not meet the jurisdictional requirements as to diversity and amount, Dickinson v. Burnham, 197 F.2d 973 (2 Cir. 1952).

remedies is strongly encouraged. Yet because the *Hurn* question involves issues of jurisdiction as well as convenience, there has been some tendency to limit its application to cases in which the state and federal claims are, as in *Hurn,* 'little more than the equivalent of different epithets to characterize the same group of circumstances.' 289 U.S., at 246.

This limited approach is unnecessarily grudging. Pendent jurisdiction, in the sense of judicial *power*, exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority . . .,' U.S.Const., Art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.' The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. Levering & Garrigues Co. v. Morrin, 289 U.S. 103. The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole." 383 U.S. at 724–25.

These principles as expressed by the *Gibbs* court apply equally to a situation where the claims of named plaintiffs in a class action are properly before the court but the similar claims of other members of the class lack subject matter jurisdiction: judicial authority over the ancillary claims exists if the relationship between the claims having independent jurisdictional grounds and the pendent claims "permits the conclusion that the entire action before the court comprises but one constitutional 'case'"; or, as applied to the jurisdictional deficiency in the instant case, "if, considered without regard to" the amount in contro-

versy, the claims satisfying the jurisdictional amount requirement and those that do not "are such that [the parties] would ordinarily be expected to try them all in one judicial proceeding, . . . there is *power* in federal courts to hear the whole". 383 U.S. at 724–25. Indeed, since pendent jurisdiction concerns constitutional limitations on the jurisdiction of federal courts, while the instant suit involves only statutory limitations, the case for recognizing jurisdiction over all class members and their claims here is even stronger. See Leather's Best, Inc. v. S. S. Mormaclynx, 451 F.2d 800, 809–11 (2 Cir. 1971); cf. Ryan v. J. Walter Thompson Co., 453 F.2d 444, 446 (2 Cir. 1971), cert. denied, 406 U.S. 907 (1972).

### III.

The majority's reliance on Snyder v. Harris, 394 U.S. 332 (1969), and Clark v. Paul Gray, Inc., 306 U.S. 583 (1939), strikes me as being unsupportable. In *Snyder* no member of the class had a claim that could satisfy the amount in controversy requirement; so the Court never reached the ancillary jurisdiction issue. The Court held that the separate and distinct claims presented by or on behalf of the various claimants could not be aggregated to supply the $10,000 jurisdictional amount. The Court reached that result because (1) there was a settled line of precedent establishing that separate and distinct claims could not be aggregated for jurisdictional amount purposes, and (2) the workload of the federal courts would be substantially increased if those precedents were overruled. The Court's position was summarized in the following statement:

> "There is no compelling reason for this Court to overturn a settled interpretation of an important congressional statute in order to add to the burdens of an already overloaded federal court system." 394 U.S. at 341.

The rationale of the *Snyder* decision is inapplicable to the issue before us. There is no "settled line of precedent" that every member of a Rule 23(b)(3) class must satisfy the amount in controversy requirement. The *Snyder* court

referred to Clark v. Paul Gray, Inc. as the first case to apply the nonaggregation rule to a class action situation. 394 U.S. at 336–37. In that case, as the majority here points out, at least one plaintiff had a claim in excess of $10,-000, but the Supreme Court held that each plaintiff who had a similar claim must meet the amount in controversy requirement. That suit, however, seems not to have been a class action, although the *Snyder* court characterized it as such; it was merely a case of permissive joinder. It was decided prior to the 1966 amendment of Rule 23, which had the effect of making a judgment in a Rule 23(b)(3) class action binding on unnamed plaintiffs, thus greatly distinguishing it from a permissive joinder situation and old Rule 23.

Most importantly, whatever the nature of the action in *Clark*, the precedential value of that decision has been substantially reduced by recent decisions. Although the Court in *Snyder* cited *Clark* with approval, its approval was directed not to the holding in *Clark* but to some of *Clark's* dicta on aggregation of claims. Since *Clark* was decided, moreover, the ancillary jurisdiction doctrine has expanded and grown. As discussed above, within the last few years many federal courts have held that a court has discretion to adjudicate a jurisdictionally insufficient claim joined with a claim for more than $10,000 if the claims derive primarily from the same operative facts. See Hatridge v. Aetna Cas. & Sur. Co., 415 F.2d 809 (8 Cir. 1969); Stone v. Stone, 405 F.2d 94 (4 Cir. 1968); Jacobson v. Atlantic City Hospital, 392 F.2d 149 (3 Cir. 1968); Wilson v. American Chain and Cable Co., 364 F.2d 558 (3 Cir. 1966); Wright, Federal Courts 124, 316 (1970). Cf. United Mine Workers v. Gibbs, *supra.* But see Alvarez v. Pan American Life Ins. Co., 375 F.2d 992, 996–97 (5 Cir.), cert. denied, 389 U.S. 827 (1967), referred to by the majority.[3] In the light of this distinct trend, and the Supreme Court's enthusiastic endorsement in *Gibbs* of the an-

cillary jurisdiction concept, old cases such as *Clark* should be wielded with discrimination.

The other reason for the result in *Snyder*—to avoid a large increase in the workload of the federal courts—is also inapplicable to the present controversy. The four named plaintiffs here meet the jurisdictional requirements; a federal court must adjudicate their claims. The burden on the federal courts would not be substantially increased if the claims of the other class members were to be heard by the same court; the predominate questions of law or fact with regard to these claims must be common to all the claims or a class action could not be brought. If the trial court decides before or during trial that the resolution of individual issues will be difficult and time-consuming, it can refuse to try the ancillary claims. The *Gibbs* decision provides authority for wide discretion in a trial judge to determine whether all the claims arising out of a transaction or occurrence should be tried together in federal court:

> "That power [pendent jurisdiction] need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction . . . ." 383 U.S. at 726.

The position of the majority in this action promotes duplicative litigation—a trial of the representative claims in the federal court and identical actions by the other class members in the state court. Not only does this discourage the named plaintiffs from asserting their right to a federal forum, but it restricts the use of the Rule 23(b)(3) class action to the extraordinary situation in which every member of the class has a claim in excess of $10,000 (unless a statute dispens-

---

3. *Alvarez* held that, in a class action where the claims of the members are several and distinct, each member must establish jurisdictional amount.

ing with the jurisdictional amount requirement can be invoked). Furthermore, there is no guarantee that a class action could be initiated in the state court. Many states discourage class actions and if the individual claims are so small that suit would have to be instituted in a state court of limited jurisdiction, most likely the class action device would be unavailable.

The majority's decision is not compelled by *Snyder* and *Clark,* as the opinion states. The result reached disregards the development of a sound doctrine for more efficient and economical judicial administration and severely impairs the efforts of those who would modernize the federal law of class actions. It undercuts this Circuit's strong policy favoring class actions. I therefore respectfully dissent.

## ON PETITION FOR REHEARING

A petition for a rehearing having been filed herein by counsel for the appellants,

Upon consideration thereof, it is

Ordered that said petition be and it hereby is denied.

TIMBERS, Circuit Judge.

I dissent.

## ON PETITION FOR REHEARING EN BANC

A petition for a rehearing containing a suggestion that the appeal be reheard en banc having been filed herein by counsel for the appellants, and a poll of the judges in active service having been taken on the request of such a judge, and Circuit Judges HAYS, FEINBERG, OAKES and TIMBERS having voted to grant the petition, and Circuit Judges KAUFMAN, MANSFIELD and MULLIGAN having voted to deny the petition, and opinions having been filed by Circuit

Judges KAUFMAN, MANSFIELD, and TIMBERS, and Chief Judge FRIENDLY being disqualified,

It is therefore

Ordered that rehearing before the court en banc is denied for want of an affirmative vote "by a majority of the circuit judges of the circuit who are in regular active service."

IRVING R. KAUFMAN, Circuit Judge (with whom Judges MANSFIELD and MULLIGAN concur):

It is unfortunate that our brothers Timbers and Oakes have chosen this case to express their disappointment over the result of the en banc vote. Although it is true that the Rule authorizes a rehearing en banc only when ordered by a "majority of the circuit judges of the circuit who are in regular active service", 28 U.S.C. § 46, the governing statute, provides that a senior judge who sat in the original hearing of the case may, in the event the case is reheard en banc, vote on the merits of the appeal. Accordingly, it would be ironic if this case were en banced, as urged by Judges Timbers and Oakes, since a minority of the judges qualified to ultimately vote on the merits would carry the day. Moreover, it is not unreasonably presumptuous to predict that Judge Smith, who authored a thoroughly considered opinion for the panel, and Judge Moore, who concurred with him, would have opposed a rehearing en banc if given that opportunity, and would have adhered to their original views on the merits, had the case been reheard en banc, notwithstanding the sparse citation in our brother Timbers's opinion. In either instance, there would have been a majority voting against those who favored a rehearing en banc.[1]

In view of the circumstances of this case, I fear our dissenting brothers have

1. As for the contention in the dissenting opinion that "The issue is whether a 3-judge *minority*—on a Court for which Congress has provided a 9-judge complement, 28 U.S.C. § 44(a) (1970)—may block the reconsideration en banc which the majority wants . . . . ," we call to our brothers' attention that four al-

so is not a majority of either eight or nine. Surely the example posed by Judge Mansfield where only five judges in regular active service are available to vote on whether to order a rehearing en banc illustrates the inappropriateness of a simplistic "majority of those voting" criterion for Rule 35.

staked too much upon the label *senior* or *active*.

I fully concur in the views expressed in Judge Mansfield's opinion.

MANSFIELD, Circuit Judge (with whom Circuit Judges IRVING R. KAUFMAN and MULLIGAN concur):

I concur in the views expressed by Judge Kaufman.

The time may well have come for a Congressional review of Title 28 U.S.C. § 46(c) which governs *en banc* procedure in federal courts of appeal, because of its apparent inconsistency in declaring, on the one hand, that a senior judge who heard an appeal as a panel member may not participate in ordering it to be heard *en banc* but, on the other, that he may participate in an *en banc* reconsideration ordered by a vote of the "majority of the circuit judges of the circuit who are in regular active service." However, the dissent, by suggesting that the majority requirement can have an unfortunate or unfair impact in cases where less than the court's full complement of judges is available to vote misconceives the purpose of the statute and of Rule 35(a) enacted pursuant to it. In my view if the dissent's views were adopted, the objective of *en banc* procedure would be threatened.

The goal of § 46(c) and of Rule 35(a) is to achieve intracircuit uniformity by assuring that where questions of exceptional importance are presented the law of the circuit will be established by the vote of a majority of the full court rather than by a three-judge panel. H.R. Rep.No.1246, 77th Cong., 1st Sess. (1941); Hearings on S. 1053; before a Subcommittee of the Senate Committee, 77th Cong., 1st Sess. 14–16 (1941). The judges voting in favor of *en banc* in this case mistakenly describe themselves as representing "the will of a majority of the Court". (Fn. 1). *Actually* they represent less than a majority. The issue here is whether four judges of a court with a nine-judge complement may force an *en banc* reconsideration that could result in the law of the circuit being determined by less than a majority of the court. If less than a majority could determine the law of the circuit, the purpose of *en banc* procedure would be eroded. Carried to its logical extreme it would mean that in a case where only five members of a nine-member court were available (either because of vacancies, disqualifications, illnesses or the like) the law of the circuit would be determined by the vote of only three. It was just to avoid such a possibility that Congress provided that a vote of a majority of the court's full complement should be required. The majority requirement serves the further salutary purpose of limiting *en banc* hearings to questions of exceptional importance rather than allow the court to drift into the unfortunate habit of requiring such hearings in every case where a minority of the court may desire a decision by the full court. At a time when the judicial work load of most courts of appeal is at an unprecedented high, sittings *en banc* should continue to remain the exception.

There is nothing unfair about the majority requirement, either generally or in this case. In cases of exceptional importance, or where there is a conflict between circuits, it may be expected that the Supreme Court will grant certiorari and settle the questions in issue. For this reason this Circuit for many years did not hear appeals *en banc,* see Lopinsky v. Hertz Drive-Ur-Self Systems, 194 F.2d 422, 429 (2d Cir. 1951) (concurring opinion of Judge Clark), preferring to adhere to panel decisions, at least where recent. See Schick, Learned Hand's Court, Johns Hopkins Press (1970) pp. 105, 115–120. As for the present case, as Judge Kaufman has observed, the ironic feature is that if the two senior judges who joined in the majority opinion were permitted a voice on the issue, it may reasonably be inferred that they would vote against hearing the appeal *en banc.*

TIMBERS, Circuit Judge (dissenting):

In this environmental suit involving alleged pollution of the waters of Lake

Champlain, the late Chief Judge Leddy of the District Court for the District of Vermont, reached his class action determination "with great reluctance". 53 F.R.D. 430, 433. In affirming the district court by a 2–1 vote, Judge Smith's forthright panel majority opinion acknowledged that "[w]e are confronted with the novel question whether a diversity case will be allowed to proceed as a class action under Fed.R.Civ.P. 23(b)(3) when the named plaintiffs meet the jurisdictional amount requirement of 28 U.S.C. § 1332(a) but the unnamed representatives of the class do not." 469 F.2d at 1033.

I have already expressed in my panel dissent, 469 F.2d at 1036, my views on this novel issue, the resolution of which will vitally affect the viability of the Rule 23(b)(3) class action. The record in this case strikes me as a particularly good one on which to resolve this important issue. The facts are not in dispute. The legal question is starkly presented. The issue to be resolved is both important and sure to recur.

Finally, I think it is most unfortunate that en banc reconsideration of such a substantial question of unusual importance is being *denied* despite the 4–3 vote by the active judges of this Court *in favor* of en banc reconsideration. This comes about because there has been a vacancy on this nine judge Court for nearly a year and one of the eight active judges has abstained from voting in this case by reason of disqualification. Fed. R.App.P. 35(a) authorizes a rehearing en banc only when ordered by a "majority of the circuit judges who are in regular active service". With only eight active judges, when one judge by reason of disqualification is *excluded* from voting whether to en banc but is *included* in determining what constitutes a majority, then the rule appears to require five out of seven to en banc the case. Such a result seems to me to be most unfortunate in thwarting the clear intent of the rule. It is especially unfortunate here where the rule operates to permit a *minority* of the active judges of the Court to deny en banc reconsideration of one of the more pressing issues of our day—an issue to which the best thinking of legal scholars, lawyers and judges has been devoted.

I therefore respectfully but most emphatically dissent from the denial of reconsideration en banc.

I am authorized to state that Judge OAKES concurs in this dissenting opinion.[1]

---

1. We note that our colleagues, Judges Kaufman and Mansfield, have chosen to file opinions dissenting from our dissent.

We claim no omniscience as to how our colleagues, Senior Judges Moore and Smith, would vote on the merits in the event of a rehearing en banc in this case. That of course is *not* the issue to which our dissent is addressed. The issue is whether a three-judge *minority*—on a Court for which Congress has provided a nine-judge complement, 28 U.S.C. § 44(a) (1970)—may block the reconsideration en banc which the majority wants of a substantial question of unusual importance. And as we all know, despite the guesswork of our colleagues as to how our Senior colleagues would vote if they could vote on whether to en banc, the fact is that not infrequently the author of the majority opinion of a divided panel has voted in favor of en banc reconsideration. See, e. g., Scenic Hudson II, 453 F.2d 463, 494 (2 Cir. 1971), cert. denied, 407 U.S. 926 (1972), and other en banc cases. And there are times when judges change their minds on the merits of an issue. See, e. g., Waterman, J., concurring in Local 1251, UAW v. Robertshaw Controls Co., 405 F.2d 29, 33 (2 Cir. 1968) (en banc), overruling Zdanok v. Glidden Co., 288 F.2d 99 (2 Cir. 1961).

To the extent that Judges Kaufman and Mansfield believe that "[t]he time may well have come for a Congressional review" of that part of 28 U.S.C. § 46 (c) (1970) that governs en banc procedure, we agree. Such review, in addition to considering the present anomaly by which a minority can thwart the will of a majority of the Court in determining whether en banc reconsideration is to be granted, might also appropriately address itself to the question whether, in en banc matters, all Senior judges who have elected to continue their judicial service pursuant to 28 U.S.C. § 294 (1970) should be fully enfranchised. Surely any Senior judge who sat on the original panel should be permitted to vote on whether to en banc the case (as he now is permitted to vote on the merits if the case is en banced).