[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 12, 2000
THOMAS K. KAHN
CLERK

----------------------------------------
No. 98-6222
----------------------------------------
FCC Agency No. 97-151

GULF POWER COMPANY,
ALABAMA POWER COMPANY, et al.,

Petitioners,

versus

FEDERAL COMMUNICATIONS COMMISSION
and UNITED STATES OF AMERICA,

Respondents.

----------------------------------------
No. 98-2589
----------------------------------------
FCC Agency No. 97-151

TAMPA ELECTRIC COMPANY,

Petitioner,

versus

FEDERAL COMMUNICATIONS COMMISSION

and UNITED STATES OF AMERICA,

Respondents.

---------------------------------------------
No. 98-4675
---------------------------------------------
FCC Agency No. 98-20-FCC


FLORIDA POWER & LIGHT COMPANY,

Petitioner,

versus

FEDERAL COMMUNICATIONS COMMISSION
and UNITED STATES OF AMERICA,

Respondents.


---------------------------------------------
No. 98-6414
---------------------------------------------

FCC Agency No. 98-20


COMMONWEALTH EDISON COMPANY,

Petitioner,

versus

FEDERAL COMMUNICATIONS COMMISSION
and UNITED STATES OF AMERICA,

Respondents.

2

---------------------------------------------
No. 98-6430
---------------------------------------------
FCC Agency No. 97-151-CS

POTOMAC ELECTRIC POWER COMPANY,

Petitioner,

versus

FEDERAL COMMUNICATIONS COMMISSION
and UNITED STATES OF AMERICA,

Respondents.

---------------------------------------------
No. 98-6431
---------------------------------------------
FCC Agency No. 97-151-CS

TEXAS UTILITIES ELECTRIC COMPANY,

Petitioner,

versus

FEDERAL COMMUNICATIONS COMMISSION
and UNITED STATES OF AMERICA,

Respondents.

3

---------------------------------------------
No. 98-6442
---------------------------------------------
FCC Agency No. 97-151-CS

UNION ELECTRIC COMPANY, d.b.a. AMERENUE,

Petitioner,

versus

FEDERAL COMMUNICATIONS COMMISSION
and UNITED STATES OF AMERICA,

Respondents.

---------------------------------------------
No. 98-6458
---------------------------------------------
FCC Agency No. 97-151-CS

AMERICAN ELECTRIC POWER SERVICES CORPORATION,

Petitioner,

versus

FEDERAL COMMUNICATIONS COMMISSION
and UNITED STATES OF AMERICA,

Respondents.

---------------------------------------------
No. 98-6476
---------------------------------------------
FCC Agency No. 97-151


DUKE ENERGY CORPORATION,

                                        Petitioner,

    versus

FEDERAL COMMUNICATIONS COMMISSION
and UNITED STATES OF AMERICA,

                                        Respondents.


---------------------------------------------
No. 98-6477
---------------------------------------------
FCC Agency 97-151


VIRGINIA ELECTRIC and POWER COMPANY,

                                        Petitioner,

    versus

FEDERAL COMMUNICATIONS COMMISSION
and UNITED STATES OF AMERICA,

                                        Respondents.

----------------------------------------------

No. 98-6478

----------------------------------------------

FCC Agency No. 97-151


CAROLINA POWER & LIGHT COMPANY,

Petitioner,

versus

FEDERAL COMMUNICATIONS COMMISSION
and UNITED STATES OF AMERICA,

Respondents.


----------------------------------------------

No. 98-6485

----------------------------------------------

FCC Agency No. 97-151


DUQUESNE LIGHT COMPANY,

Petitioner,

versus

FEDERAL COMMUNICATIONS COMMISSION
and UNITED STATES OF AMERICA,

Respondents.


6

```
-------------------------------------------
                    No. 98-6486
-------------------------------------------
                 FCC Agency No. 97-151
```

DUQUESNE LIGHT COMPANY,

                                        Petitioner,

    versus

FEDERAL COMMUNICATIONS COMMISSION
and UNITED STATES OF AMERICA,

                                        Respondents.

```
--------------------------------------------------------------------
                 Petitions for Review of an Order
              of the Federal Communications Commission
--------------------------------------------------------------------
```
**(September 12, 2000)**

**ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC**

(Opinion _____, 11th Cir., 19__, ____ F.3d _____)

Before TJOFLAT, EDMONDSON, BLACK, CARNES, BARKETT, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

The Court having been polled at the request of one of the members of the

Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it (Rule 35, Federal Rules of Appellate Procedure; Eleventh Circuit Rule 35-5), the Suggestion of Rehearing En Banc is DENIED.

ENTERED FOR THE COURT:

/S/ J. L. EDMONDSON
United States Circuit Judge

_____
•       All other active judges of the Court were recused.

CARNES, Circuit Judge, concerning the denial of rehearing en banc:

My opinion concurring in part and dissenting in part from the panel decision, see Gulf Power Co. v. FCC, 208 F.3d 1263, 1279 (11th Cir. 2000), explains why I think the panel majority erred in holding the Pole Attachment Act's regulated rate provisions do not extend to attachments used for wireless communications and Internet services. There is no point in reiterating here what I said there. Instead, I write separately upon the denial of rehearing en banc,

8

because this case is a good example of why the absolute majority provision of Federal Rule of Appellate Procedure 35(a) needs to be changed by Congress or by the Supreme Court through the Rules Enabling Act, see 28 U.S.C. 2072. [1]

Rule 35(a) provides that: "A majority of the circuit judges who are in regular active service may order that an appeal or other proceeding be heard or reheard by the court of appeals en banc." This Court, along with some of the other federal courts of appeals, has interpreted "circuit judges who are in regular active service" to include all active circuit judges serving on the court at the time of the poll including those judges who are disqualified from participating. In other words, we interpret the rule to mean that the votes of absolute majority, or seven of the twelve judges in active service on our court now, are necessary to take a case en banc. I do not quarrel with our interpretation of the rule, although we are on the short side of a circuit split regarding it, see Judith A. McKenna et al., Federal Judicial Center, Case Management Procedure in the Federal Courts of Appeals  23 (2000) (table indicating that eight circuits do not count disqualified judges when calculating a majority for en banc rehearing purposes, while five circuits do).[2]   But I do think

---

[1]The operative language in Rule 35(a) is drawn from 28 U.S.C. § 46(c), which would need to be amended by Congress or superceded by an amendment to the rule, see 28 U.S.C. § 2072 (b).

[2]A good recounting of the history of the interpretative issue and a summary of the arguments on both sides of it are contained in James J. Wheaton, Note, Playing with Numbers: Determining the Majority of Judges Required to Grant En Banc Sittings in the United States Courts of

that Rule 35(a) should be amended so that it is clear that disqualified judges are not counted, in effect, as a vote against rehearing en banc.

As the order denying rehearing en banc in this case indicates, five of the twelve judges in active service on this Court are disqualified from participating in this important case.[3] That leaves only seven judges. Two of those seven judges split on the legal issue in question – one of them authored the panel majority opinion and the other one dissented from an important holding in it. Yet the dissenting judge and the five remaining, non-disqualified judges in active service are unable to vote the case en banc under Rule 35(a), no matter how wrong they may think the panel majority's holding is, unless the judge who authored the panel majority opinion votes with them to do it. It sometimes happens that a judge who authors a panel opinion votes to take the case en banc, see Songer v. Wainwright, 756 F.2d 799 (11th Cir. 1985)(Roney, J., specially concurring in the order granting

_____

Appeals, 70 Va. L. Rev. 1505 (1984). See also Michael Ashley Stein, Uniformity in the Federal Courts: A Proposal for Increasing the Use of En Banc Appellate Review, 54 U. Pitt. L. Rev. 805, 807 - 17, 825 - 27, 851 - 54 (1993).

[3]Some may say that all the order indicates is that five judges did not participate and that they obviously recused themselves, but not necessarily that they were disqualified from participating. See generally 28 U.S.C. § 46(b)("unless such judges cannot sit because recused or disqualified"). Whether there is any real distinction between recusal and disqualification is a collateral issue not material to the present discussion. What is material is that five judges of this Court in active service felt compelled not to participate in the en banc poll. I will follow what appears to be the practice of most commentators and decisions by using disqualification as a synonym for recusal.

10

rehearing en banc), but not very often.[4]

Assume with me, for present purposes, that this is not one of those rare cases in which the judge who authored the majority opinion for the panel wants to have it reviewed by the court sitting en banc – assume that judge has voted against en banc rehearing. If this is one of the usual cases where the author of the panel opinion votes against rehearing en banc, then this case could not be taken en banc no matter how strongly the remaining six non-disqualified judges thought it should be. En banc rehearing is not possible in such a situation because six is not seven, and Rule 35(a) insists on seven votes, and it is not satisfied by any fewer number, not even by six out of seven. The result is that the law of this circuit is decided not on the basis of the votes of a majority of the seven non-disqualified judges of this Court in active service, but instead by the vote of the senior judge from another circuit who was on the panel and broke the tie created by the conflicting votes of the two judges of this court in active service who were on the panel.[5] That is how Rule 35(a)'s absolute majority requirement operates.

[4]Sometimes a judge will author or join a panel decision dictated by a prior panel precedent that the judge feels should be changed by the en banc court. In that circumstance, which does not occur with much frequency, it is not unusual for a judge who wrote or joined the panel decision to vote to take the case en banc, in effect using it as a vehicle for overruling the prior panel precedent.

[5]In the usual case there will be a visiting judge or a senior judge of this Court sitting on a panel with two active judges. That was the way more than 70 percent of our panels were composed this court year.

11

As bad as the operation of Rule 35(a) is in this case, it can be worse. If one more judge in active service on this Court had been disqualified, it would have been impossible for the remaining six judges in active service to vote the case en banc, even if the judge who authored the majority opinion was willing to take the extraordinary step of voting for en banc rehearing.

The rule as written can even operate to impose on the circuit and its judges law with which every disqualified judge in active service disagrees. It is not unusual for our court to sit in panels consisting of one active judge plus two senior judges, or an active judge plus one senior judge and one visiting judge.[6] With such panels, if six or more judges in active service are disqualified from participating in a case, Rule 35(a) makes it possible for the law of the circuit to be set by one senior judge and one visiting judge, even though every one of the non-disqualified judges in active service (up to six in number) adamantly disagree with them about what that law should be.

It can be worse still. If the chief judge of the circuit declares an emergency, which is defined to include the illness of a judge, the requirement that a majority of each panel of a court of appeals be members (active or senior) of that court of

---

[6]By "visiting judge" I mean one who was not appointed to sit on this Court. A visiting judge can be a district judge from this or another circuit, or a senior circuit judge from another circuit.

appeals is lifted. See 28 U.S.C. § 46(b).[7]  Although not frequently invoked, this emergency  provision has recently resulted in a panel of our Court being composed of one judge in active service and two visiting judges. See Parris v. The Miami Herald Publ'g Co., 216 F.3d 1298, 1299 (11th Cir. 2000) (panel consisting of one judge of this Court, a senior judge of another circuit, and a senior district court judge). In that circumstance, if six or more judges in active service on this Court were disqualified,  Rule 35(a) could operate to have the law of the circuit made by two visiting judges, and there would be nothing that the six active judges of this Court who were not disqualified could do about it.

What possible justification can there be for the absolute majority rule – why make it possible to have the law of the circuit determined by one active judge against the views of six others, or by a senior and a visiting judge or two visiting judges against the views of six judges in active service?  Why not let the decision whether to rehear a case en banc be made by a majority of the judges in active service who are not disqualified?  More than a quarter of a century ago, Judge Mansfield, joined by two other Second Circuit judges, put forward two

---

[7]"In each circuit the court may authorize the hearing and determination of cases and controversies by separate panels, each consisting of three judges, at least a majority of whom shall be judges of that court, unless such judges cannot sit because recused or disqualified, or unless the chief judge of that court certifies that there is an emergency including, but not limited to, the unavailability of a judge of the court because of illness."  28 U.S.C. § 46(b).

13

justifications for the absolute majority requirement of Rule 35(a), and 28 U.S.C. § 46(a) from which Rule 35(a) is drawn. See Zahn v. Int'l Paper Co., 469 F.2d 1033, 1041 (2d Cir. 1972)(Mansfield, J., concurring in the denial of rehearing en banc).

First, Judge Mansfield suggested, the absolute majority rule seeks "to achieve intracircuit uniformity by assuring that where questions of exceptional importance are presented the law of the circuit will be established by the vote of a majority of the full court rather than by a three-judge panel." Id. If protecting majority rule is the goal of Rule 35(a), then it is counterproductive. Under our prior panel precedent rule, a panel decision is the law of the circuit unless and until it is overruled by the Supreme Court or the en banc court. See United States v. Steele, 147 F.3d 1316, 1318 (11th Cir. 1998)("The law of this circuit is emphatic that only the Supreme Court or this court sitting en banc can judicially overrule a prior panel decision.")(internal marks and citation omitted). Every other circuit, or virtually every one, follows the same principle: The law of the circuit is established not just by en banc decisions, but by panel decisions as well. See United States v. Washington, 127 F.3d 510, 517 (6th Cir. 1997)("In the Sixth Circuit, as well as all other federal circuits, one panel cannot overrule a prior panel's published decision."); Phillip M. Kannan, The Precedential Force of Panel Law, 76 Marq. L. Rev. 755, 755-56 (1993) ("[A]ll thirteen circuits, with the

14

possible exception of the Seventh Circuit, have developed the interpanel doctrine: No panel can overrule the precedent established by any panel in the same circuit; all panels are bound by prior panel decisions in the same circuit.").  The absolute majority requirement does nothing to prevent panel decisions from establishing the law of the circuit; instead, the requirement makes it more difficult, or impossible, to have the law made in some panel decisions reviewed en banc.

By  insulating panel decisions from en banc review, the absolute majority rule makes it less likely that the law of the circuit will represent the views of a majority of the judges in active service.  After all, which is a better bet to reflect the views of seven of twelve active judges – the views of six of those judges, or the views of one?  And where a question of exceptional importance is involved, shouldn't the law of the circuit be decided by six out of twelve active judges instead of by  one active judge coupled with a visiting judge?  With en banc worthy issues is it not better to have the law of the circuit  decided by six of twelve  judges in active service  than by one of them, or by none of them – which is what can happen under Rule 35(a) when a panel includes two senior judges or a senior and a visiting judge.

Judge Mansfield also suggested that  the absolute majority requirement "serves the further salutary purpose of limiting en banc hearings to questions of

exceptional importance rather than allow the court to drift into the unfortunate habit of requiring such hearings in every case where a minority of the court may desire a decision by the full court." Zahn, 469 F.2d at 1041. Two things about that. First, the question is not whether to limit en banc review to questions of exceptional importance, but who is better to decide whether a case meets that standard and warrants en banc review – a majority of the judges in active service who are not disqualified, or a minority of those non-disqualified judges, perhaps only one of them? Second, whatever may have been the case a quarter of a century ago, viewed from the perspective of federal appellate courts struggling under the heavy and increasing caseloads of the present day, the notion that courts might "drift" into the "unfortunate habit" of having too many en banc rehearings is quaint. En banc rehearings take a lot of judicial resources and no court of appeals is going to drift into the habit of having too many of them regardless of whether Rule 35(a) is amended.

Judge Adams of the Third Circuit also had a go at justifying the absolute majority requirement. The case was Lewis v. Univ. of Pittsburgh, 725 F.2d 910 (3d Cir. 1983), and the vote was five for rehearing en banc, three against, and two disqualified, id. at 928 - 29 (opinion of Adams, J., on the petition for rehearing). Fearing that the result – denial of rehearing en banc when the vote was five to

16

three in favor of it – "must appear quite unfair" to the losing litigant, Judge Adams attempted to explain the reason for the absolute majority requirement. Id. at 929. The "main reason" for the requirement, he said, "is that it insures that major developments in the law of the Circuit reflect the participation of all members of the Court." Id. But, of course, because of the prior panel precedent rule the absolute majority requirement does not do that at all. The decision of the panel majority, even if it was composed of only one active judge (or none), is the law of the circuit unless and until overruled en banc or by the Supreme Court. Coupled with the prior panel precedent rule, the absolute majority requirement actually operates to make it more likely that the law of the circuit will not represent the views of a majority of the judges in active service. It does that by preventing the non-disqualified active judges from voting a case en banc in some circumstances even where they (because of their greater number) are more likely to reflect the views of the majority of judges in active service than those, if any, voting against en banc rehearing.

Judge Adams also suggested that lowering the absolute majority bar would lead to the law becoming more unsettled. See id. He gave as a hypothetical for his court, which had ten active members, the situation in which there were five recusals and a vote of three to two in favor of en banc rehearing. See id. Two

things about that.  First, Judge Adams did not explain why letting the law be decided by three active judges instead of by two would unsettle it. Perhaps the assumption is that en banc rehearings are unsettling, and therefore  the fewer of them the better.  But leaving a panel opinion in place, particularly if en banc review is sought because the panel opinion conflicts with one or more prior panel decisions, or with a Supreme Court decision, can also  unsettle the law.  Besides, the argument that the absolute majority requirement promotes stability in the law by reducing the number of en banc rehearings knows no end.  If cutting down on the number of en banc rehearings is the goal, why limit the effort to recusal situations?  Why not raise the bar in all cases by requiring the vote of some super majority, such as three-fifths or three-fourths, of all active judges?

Rule 35(a) should be clarified through amendment, because the circuits are split eight to five on the issue,  see McKenna, supra, and there is no good reason why a uniform rule should not be followed in all the circuits.  For example, both the Tenth Circuit and this circuit have twelve authorized judgeships. If five  active judges are disqualified and six of the remaining seven are convinced the panel decision should be corrected en banc, in the Tenth Circuit it will be.  In this circuit, it will not be. A litigant who loses before a  panel in this circuit should not be treated differently in terms of the basic en banc procedures than one who loses

before a panel in the same circumstances in another circuit. The definition of "majority of the circuit judges who are in regular active service" should not vary with geography.

It is particularly unfortunate that the geographic lottery relating to Rule 35(a) has worked against en banc rehearing in this case, because this is an important case that may affect every person who uses wireless communication or Internet service in this country. The case comes to us on consolidated petitions for review filed by power companies from around the country and involves the competing interests of those companies, telephone companies, cable television companies, wireless communication companies, Internet service providers, and of course, consumers. A more national case could hardly be imagined. And, as the Department of Justice points out, "because this case arose on Hobbs Act review of FCC rules, it may present the last opportunity for <u>any</u> court to address the core, industry-shaping issues presented here." FCC's Petition for Panel Rehearing and Suggestion for Rehearing En Banc at 2. Yet the law on those industry-shaping issues of exceptional importance is decided not by a majority of the judges in active service on this Court but instead solely by one active judge of this Court joined by a senior judge from another court.

In his defense of the absolute majority requirement, Judge Mansfield said

19

that it is not unfair, because "[i]n cases of exceptional importance, or where there is a conflict between circuits, it may be expected that the Supreme Court will grant certiorari and settle the questions in issue." Zahn, 469 F.2d at 1041. We will see.